UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VENKAT GUNTIPALLY,<br><br>　　　　　Defendant. | Case No. 16-CR-00189-LHK-2<br>Case No. 19-CV-00098-LHK<br><br>**ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Re: Dkt. No. 297 |

Before the Court is Petitioner Venkat Guntipally's ("Petitioner") pro se[1] motion to vacate

his conviction and sentence under 28 U.S.C. § 2255. Having considered the parties' submissions,

the relevant law, and the record in this case, the Court DENIES Petitioner's motion to vacate

under 28 U.S.C. § 2255.

---

[1] Petitioner's § 2255 motion and subsequent filings appear to have been written with some
assistance. Emails between Petitioner and his wife Sunitha regarding Petitioner's § 2255 motion
also refer to a "Bill" providing assistance. ECF No. 364, Ex. 3. If Petitioner's papers were drafted
by an undisclosed paralegal or attorney, Petitioner and the drafter are warned that such
ghostwriting is frowned upon. *See Walker v. Pac Mar. Assoc.*, 2008 WL 1734757, at *2 (N.D.
Cal. Apr. 14, 2008) (warning that ghostwriting could lead to imposition of sanctions); *see also
Makreas v. Moore Law Grp., A.P.C*, 2012 WL 1458191, at *3 (N.D. Cal. Apr. 26, 2012)
("ghostwriting is not permitted in the federal courts").

## I.   BACKGROUND

### A. Complaint and Indictment

On October 27, 2014, the government filed a criminal complaint against Petitioner, his wife Sunitha Guntipally ("Sunitha"), Pratap Kondamoori ("Kondamoori"), and Sandhya Ramireddi ("Ramireddi"). ECF No. 1. The complaint alleged that Petitioner and his three co-defendants participated in a conspiracy to commit visa fraud in violation of 18 U.S.C. § 371. *Id.* at 2. On November 19, 2014, attorney Peter Leeming appeared on Petitioner's behalf. ECF No. 37.

On May 5, 2016, Petitioner and his three co-defendants were indicted in the Northern District of California by a federal grand jury. ECF No. 112. Petitioner was indicted on one count of conspiracy to commit visa fraud, use of false documents, mail fraud, obstruction of justice, and witness tampering in violation of 18 U.S.C. § 371; ten counts of aiding and abetting visa fraud in violation of 18 U.S.C. §§ 2, 1546(a); seven counts of aiding and abetting use of false documents in violation of 18 U.S.C. §§ 2, 1001(a)(3); and four counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2, 1341. *Id.*

On May 6, 2016, Petitioner pled not guilty. ECF No. 115.

### B. Petitioner Executes a Plea Agreement

On April 24, 2017, Petitioner executed a cooperation plea agreement, which Petitioner personally signed. ECF No. 155 ("Plea Agreement"). Petitioner stated in that plea agreement that he is the president of two staffing companies, DS Soft Tech and Equinett. *Id.* ¶ 2. Petitioner admitted that he had helped submit more than 100 phony H-1B visa applications in furtherance of the visa fraud scheme and to benefit his staffing companies:

> Beginning in or about 2010 and continuing through in or about 2014, I, together with Sunitha and others, submitted, and caused to be submitted, more than 100 phony H-1B visa applications by means of mailings to the Department of Homeland Security, for temporary nonimmigrant beneficiaries sponsored by petitioning companies DS Soft Tech, Equinett, and SISL Networks.

*Id.* at ¶ 2. Petitioner explained that the visa fraud scheme relied on false end employers to sponsor H-1B beneficiaries that Petitioner and his co-defendants could then place at legitimate positions,

which enabled Petitioner and Sunitha to gain an advantage over other staffing companies:

> Together with the other members of the conspiracy, I submitted, and caused to be submitted, by means of U.S. Mail and commercial carrier, I-129 petitions and other supporting documents to DHS that contained false representations and material omissions about the nature and existence of purported end-client companies and the nature, existence, and scope of H-1B positions. The end-client companies listed in our H-1B applications – including two companies that I controlled, Traction HQ and Technia Energy – either did not exist or never received the proposed H-1B workers. None of them ever intended to receive those H-1B workers. These applications were designed and intended to create a pool of H-1B beneficiaries who then could be placed at legitimate employment positions in the Northern District of California and elsewhere. Through this scheme, I, along with my co-conspirators, gained an unfair advantage over competing employment-staffing firms and, as a result, Sunitha and I earned ill-gotten gains from these downstream companies for ourselves and our companies.

*Id.* Petitioner also admitted that he had taken actions to obstruct the government's investigation into the visa fraud scheme:

> Moreover, on or about April 5, 2014, after I became aware of the government's investigation into my conduct, I instructed P.R. to write checks to DS Soft Tech and to Equinett in an effort to make it appear that Traction HQ was engaged in business with DS Soft Tech and with Equinett, when in fact no such business had occurred. I undertook this action in an effort to mislead the agents, conceal the conspiracy, and otherwise obstruct the government's investigation.

*Id.*

> In the plea agreement, Petitioner waived his right to a jury trial:

> I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

*Id.* ¶ 3.

Petitioner also "agree[d] not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective." *Id.* ¶ 5. Further, Petitioner "agree[d] to cooperate with the U.S. Attorney's Office before and after I am sentenced." *Id.* ¶ 10.

3

Petitioner affirmed that he had discussed the case, evidence, and plea agreement with his attorney, Leeming: "I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested." *Id.* ¶ 21. Finally, Petitioner affirmed that his guilty plea was voluntary:

> I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plea guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

*Id.* ¶ 23.

### C. Petitioner Pleads Guilty at the Change of Plea Hearing

On April 24, 2017, the Court held a change of plea hearing. ECF No. 156. Under oath, Petitioner pled guilty to Count One of the indictment, for conspiracy to commit visa fraud, use of false documents, mail fraud, obstruction of justice, and witness tampering in violation of 18 U.S.C. § 371. *Id.*

At the change of plea hearing, Petitioner confirmed that Petitioner had read his plea agreement, understood the plea agreement, and discussed the plea agreement with Leeming:

> THE COURT: Did you read your plea agreement?
> THE DEFENDANT: Yes, I did.
> THE COURT: Do you understand your plea agreement?
> THE DEFENDANT: Yes, your honor.
> THE COURT: Have you had enough time to discuss the plea agreement with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: Has your attorney been able to answer your questions about the plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: Are you satisfied with the services your attorney has provided to you?
> THE DEFENDANT: Yes.

4/24/17 Tr. 4:9-21. Petitioner confirmed that his guilty plea was voluntary:

> THE COURT: Has anyone made any threats against you to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Is your decision to plead guilty free and voluntary?
> THE DEFENDANT: Yes.

4

United States District Court
Northern District of California

*Id.* at 5:13-18. Petitioner confirmed that he voluntarily waived his right to a jury trial:

> THE COURT: First, do you understand that you have the right to a jury trial?
> THE DEFENDANT: Yes.
> THE COURT: Do you give up that right?
> THE DEFENDANT: Yes.

*Id.* at 7:20-24.

Later in the hearing, the government gave an offer of proof, including the following:

> Further, your honor, the government could also show beyond a reasonable doubt that beginning in or about the year 2014, Mr. Guntipally, together with Sunitha Guntipally and others, submitted, and caused to be submitted, more than 100 phony H-1B visa applications by means of mailings to the Department of Homeland Security, for temporary non-immigrant beneficiaries sponsored by petitioning companies DS Soft Tech, Equinett, and SISL Networks.

*Id.* at 14:13-21. Petitioner affirmed that the facts set forth in the government's offer of proof were true and correct:

> THE COURT: Mr. Guntipally, do you hear and understand – did you hear and understand the facts the government is prepared to prove?
> THE DEFENDANT: Yes.
> THE COURT: Sir, are those facts true and correct?
> THE DEFENDANT: Yes.

*Id.* at 21:14-19. Then, Petitioner pled guilty and the Court accepted Petitioner's guilty plea. *Id.* at 21:20-22:14.

Petitioner's co-defendants—Sunitha, Ramireddi, and Kondamoori—all pled guilty for their roles in the visa fraud scheme. Ramireddi was the first to plead guilty, on April 17, 2017. ECF No. 153. Kondamoori pled guilty on April 24, 2017, the same day as Petitioner's guilty plea. ECF No. 158. Sunitha pled guilty on May 3, 2017, nine days after Petitioner pled guilty on April 24, 2017. ECF No. 163.

### D. Petitioner Hires a New Defense Attorney

On March 13, 2018, before Petitioner's sentencing, Petitioner retained Martín Sabelli as his attorney in place of Leeming. ECF Nos. 251 & 252.

On March 30, 2018, Sabelli indicated in an email to the government that Petitioner was

considering filing a motion to withdraw his guilty plea: "My client has not decided whether or not to file the motion to withdraw." ECF No. 333-8 ("Lerman Decl."), Ex. 3. On April 12, 2018, Sabelli informed the government that Petitioner had decided not to file a motion to withdraw his guilty plea and was prepared to move forward with sentencing: "Mr. Guntipally has decided not to move to withdraw his plea. I regret the inconvenience to both of you. May I ask for available dates for you folks for the sentencing?" Lerman Decl., Ex. 4.

On April 19, 2018, the parties filed a stipulation to continue Petitioner's sentencing. ECF No. 254. Sabelli explained in the stipulation that he had reviewed the extensive discovery in the case and had answered Petitioner's concerns about the case: "Undersigned defense counsel substituted in as counsel on March 13, 2018. He then undertook review of the voluminous discovery in this matter in consultation with former counsel. Undersigned defense counsel also answered Mr. Guntipally's questions and addressed his concerns." *Id.* at 1. On April 19, 2018, the Court granted the parties' stipulation to continue Petitioner's sentencing. ECF No. 255.

In May 2018, Petitioner requested a proffer session with the government. Lerman Decl., Ex. 1. According to the government's notes from the May 17, 2018 proffer session, Petitioner first downplayed his knowledge of the visa fraud scheme. *Id.* at 3. However, after Petitioner consulted with Sabelli, Petitioner "informed RA and AUSA Lerman that he wanted to revise his previous answers since he had lied." *Id.* at 4. Then, Petitioner "stated that he had participated in the fraud scheme and knew he was committing fraud from at least 2011 onward." *Id.*

**E. The Court Sentences Petitioner, but Defers Petitioner's Self-Surrender Date**

On June 6, 2018, Petitioner submitted a sentencing memorandum through Sabelli. ECF No. 268. In that memorandum, Petitioner accepted responsibility for his criminal conduct: "Finally, Mr. Guntipally accepts responsibility for his conduct and for the number of visas processed and acknowledges the applicability of the nine-point upward adjustment in the guidelines for more than 100 visas processed." *Id.* at 5; *see also id.* at 7 ("Mr. Guntipally profoundly regrets the choices that he has made.").

United States District Court
Northern District of California

On June 13, 2018, the Court sentenced Petitioner. ECF No. 274; *see* ECF No. 326 (transcript). At the sentencing, Sabelli stated that Petitioner accepted responsibility for his criminal conduct: "Mr. Guntipally fully admits his guilt and fully accepts responsibility." 6/13/18 Tr. 11:17-18. Petitioner also accepted responsibility for his criminal conduct: "I fully accept responsibility for my actions for what I did in this case. I'm not proud of what I have done and think every night about what I've done." *Id.* at 18:12-14. The Court sentenced Petitioner to a low-end sentence of 30 months. *Id.* at 28:18-30:10. However, the Court delayed Petitioner's self-surrender date a full year to June 14, 2019 to permit Petitioner to remain at home while Petitioner and Sunitha's then 17 year old son finished his last year of high school. *Id.* at 20:11-19; 30:7-12.

## F. Petitioner Files His § 2255 Motion Contemporaneously with Sunitha's Motion to Withdraw Guilty Plea

On December 18, 2018, at her resentencing hearing, Petitioner's wife and co-defendant Sunitha first indicated her intent to file a motion to withdraw her guilty plea. ECF No. 291.[2] Petitioner was sitting in the front row of the gallery when Sunitha stated that she intended to file a motion to withdraw her guilty plea. Lerman Decl. ¶ 8. The Court set January 4, 2019 as the date for Sunitha to file her motion to withdraw guilty plea. ECF No. 292.

On January 4, 2019, the same day that Sunitha moved to withdraw her guilty plea, *see* ECF No. 296, Petitioner signed and dated the instant pro se motion to vacate under § 2255. ECF No. 297. Petitioner's § 2255 motion was filed on the docket on January 7, 2019. *Id.*

Contemporaneous with Petitioner's § 2255 motion, Petitioner filed a motion for leave to file a memorandum of points and authorities in support of his § 2255 motion, and attached a memorandum of points and authorities. ECF No. 298 ("Mot."). The Court GRANTS Petitioner's motion for leave to file a memorandum of points and authorities in support of his § 2255 motion.

On January 11, 2019, the government filed an application for a finding that Petitioner

---

[2] The extensive procedural history relevant to Sunitha's motion to withdraw guilty plea is set forth in the Court's order denying Sunitha's motion to withdraw guilty plea, which is incorporated herein by reference. ECF No. 334.

waived the attorney-client privilege as to Leeming, Petitioner's first defense attorney, because Petitioner's § 2255 motion alleges that Leeming provided ineffective assistance. ECF No. 301.

On January 11, 2019, Petitioner filed a motion to take leave to supplement his § 2255 motion to add a claim that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 303. The Court GRANTS Petitioner's motion to supplement his § 2255 motion with *Brady* claims. On January 16, 2019, Petitioner filed a "supplemental issue" raising his *Brady* claims. ECF No. 306.

On January 16, 2019, the Court granted the government's application for a finding that Petitioner waived the attorney-client privilege as to Leeming. ECF No. 304.

On January 17, 2019, the Court ordered the government to respond to Petitioner's § 2255 motion. ECF No. 305.

On March 8, 2019, the government filed its opposition to Petitioner's § 2255 motion. ECF No. 333 ("Opp.").

Also, on March 8, 2019, the Court denied Sunitha's motion to withdraw her guilty plea. ECF No. 334. In that order, the Court expressed concern that Petitioner's § 2255 motion was filed as "an attempt to create new evidence to support [Sunitha's] motion to withdraw guilty plea." *Id.* at 23–24. The Court noted that Sunitha and Petitioner "were in regular contact leading to [Sunitha's] and Venkat's near-simultaneous motions," and had exchanged almost 200 phone calls in the four months preceding the near-simultaneous motions. *Id.*; *see* ECF No. 302-3 (record of phone calls). Moreover, in a November 30, 2018 email with the subject line "Ask Bill," Sunitha emailed Petitioner a list of statements and questions relating to Petitioner's § 2255 motion, including "you did not do anything but they gave you 9 points" and "how much time will it take for 2255." ECF No. 364, Ex. 3 at 10.

In a later email sent on December 5, 2018, Sunitha appeared to send Petitioner a draft declaration to accompany his § 2255 motion. *See* ECF No. 363, Ex. 5. For example, the email refers to "me and my wife," then lists allegations about ineffective assistance of counsel and refers

to "Peter" (presumably Peter Leeming, Petitioner's attorney). *Id.* at 1. The email also states that the attorney said "codefendant became government witness and will testify against you" and "Speedy trial is there, ask to check that." *Id.* at 2.

Consistent with Sunitha's December 5, 2018 email, Petitioner's January 7, 2019 § 2255 motion and accompanying declaration allege that Leeming provided ineffective assistance based in part on a speedy trial claim, ECF No. 298 at 9, and in part on Leeming's advice to Petitioner that Petitioner's codefendants might testify against Petitioner if Petitioner went to trial. ECF No. 298, Ex. 1 at ¶ 3. The emails thus raise the strong inference that Petitioner's § 2255 motion was coordinated with Sunitha's motion to withdraw guilty plea.

On March 29, 2019, Petitioner filed an emergency motion to disqualify the undersigned. ECF No. 339. On April 1, 2019, the government filed an opposition to Petitioner's motion to disqualify. ECF No. 341. On April 3, 2019, the Court denied Petitioner's motion to disqualify. ECF No. 344.

On April 1, 2019, Petitioner filed three motions. First, Petitioner filed a motion for an order finding waiver of the attorney-client privilege as to Leeming and an order to compel Leeming to disclose all communications between Leeming and Petitioner. ECF No. 345. Second, Petitioner requested leave to conduct discovery in support of his *Brady* claims. ECF No. 346. Third, Petitioner requested an extension of time to file his reply, which was due April 7, 2019. ECF No. 347. Petitioner requested that extension due to his other two pending motions. *Id.* at 2.

On April 4, 2019, the government filed responses to all three of Petitioner's motions. ECF Nos. 352, 353, 354.

On April 5, 2019, the Court denied all three of Petitioner's motions. ECF No. 356. First, the Court denied as moot Petitioner's motion for an order finding waiver of the attorney-client privilege as to Leeming because the Court had already found in a written order that Petitioner waived the attorney-client privilege as to Leeming. *Id.* at 2; *see* ECF No. 304. The Court also denied Petitioner's request for discovery of Petitioner's own communications with Leeming

because any such communications were in Petitioner's possession. *Id.* Second, the Court denied Petitioner's request for *Brady* discovery because Petitioner failed to make the requisite factual showing of good cause. *Id.* at 2–3. Third, the Court denied Petitioner's request for an extension of time to file his reply because the extension request was predicated on Petitioner's other pending motions, which lacked merit and had been denied. *Id.* at 3.

On April 5, 2019, Petitioner filed his reply in support of his § 2255 motion. ECF No. 358 ("Reply").

On April 9, 2019, Petitioner filed a second motion to disqualify the undersigned. ECF No. 361. The Court DENIES Petitioner's second motion to disqualify the undersigned.

On May 14, 2019, Petitioner filed a writ of mandamus with the Ninth Circuit. ECF No. 372-1. Petitioner asked the Ninth Circuit to reassign the instant § 2255 motion from the undersigned and to stay Petitioner's June 14, 2019 self-surrender date pending resolution of Petitioner's § 2255 motion. *Id.* at 7.

On May 24, 2019, Petitioner filed an urgent motion with the Ninth Circuit to stay Petitioner's June 13, 2019 self-surrender date pending the Ninth Circuit's ruling on Petitioner's writ of mandamus. ECF No. 375.

On May 28, 2019, the Ninth Circuit denied Petitioner's writ of mandamus and denied as moot Petitioner's urgent motion for a stay of Petitioner's self-surrender date. ECF No. 377.

On June 4, 2019, Petitioner filed a motion in this Court to expedite the Court's decision on Petitioner's § 2255 motion and to stay Petitioner's June 14, 2019 self-surrender date pending the Court's resolution of Petitioner's § 2255 motion. ECF No. 379. On June 5, 2019, the Court denied Petitioner's motion to expedite the Court's decision on Petitioner's § 2255 motion and to stay Petitioner's self-surrender date. ECF No. 380.

On June 10, 2019, Petitioner filed an urgent petition for a writ of coram nobis. ECF No. 382. On June 11, 2019, the government filed an opposition to Petitioner's coram nobis petition. ECF No. 383. On June 11, 2019, the Court denied Petitioner's coram nobis petition. ECF No.

United States District Court
Northern District of California

384.

On June 13, 2019, Petitioner filed a motion for leave to amend his § 2255 motion to add a claim of actual innocence, and attached a brief in support of his claim of actual innocence. ECF No. 385. On June 14, 2019, the government filed a response, and stated that although the government did not oppose Petitioner's request to amend Petitioner's § 2255 motion, the government would oppose Petitioner's substantive argument for relief. ECF No. 386.

On June 21, 2019, the Court granted Petitioner's motion for leave to amend his § 2255 motion and deemed his § 2255 motion amended to include his claim of actual innocence. ECF No. 387. The Court set July 12, 2019 as the government's deadline to respond and July 26, 2019 as the deadline for Petitioner's optional reply. *Id.* at 1–2.

On July 12, 2019, the government filed its opposition to Petitioner's claim of actual innocence. ECF No. 388. Petitioner did not file a reply.

## II. LEGAL STANDARD

A 28 U.S.C. § 2255 motion to set aside, correct or vacate a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (internal quotation marks omitted). A Court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is

United States District Court
Northern District of California

entitled to no relief.  *See Howard*, 381 F.3d at 877.

## III.    DISCUSSION

In his § 2255 motion and various supplements to that § 2255 motion, Petitioner makes three arguments: (1) Petitioner's guilty plea is invalid because his first attorney, Peter Leeming, was ineffective; (2) the government withheld favorable evidence from Petitioner in violation of *Brady*; and (3) the statute to which Petitioner pled guilty, 18 U.S.C. § 371, is unconstitutional.  For the reasons stated below, the Court finds that Petitioner has not demonstrated his entitlement to any relief under § 2255.  The Court discusses Petitioner's three arguments for relief in turn.

### A.   Ineffective Assistance of Counsel Claim

A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prevail on such a claim, a petitioner must show: (1) that counsel's representation fell below the range of competence demanded of attorneys in criminal cases; and (2) that the petitioner was prejudiced by counsel's representation.  The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  In order to demonstrate prejudice, the petitioner must "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The *Strickland* test also applies to ineffective assistance of counsel claims "arising out of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  In a challenge to a guilty plea based on ineffective assistance of counsel, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's alleged errors and coercion, the petitioner would not have pleaded guilty and would have insisted on going to trial.  *Id.* at 58–59.

In his § 2255 motion, Petitioner makes several allegations that Leeming was ineffective, although Petitioner's claims fall into two broad categories: (1) Leeming was ineffective for waiving Petitioner's right to a jury trial; and (2) Leeming coerced Petitioner to plead guilty.  The Court first discusses Petitioner's allegations about the jury trial waiver and then discusses whether

12

Leeming coerced Petitioner's guilty plea.

### 1. Petitioner's Waiver of His Right to a Jury Trial

First, Petitioner contends that Leeming was ineffective for waiving Petitioner's right to a jury trial. However, Petitioner's allegation has no factual basis. Petitioner personally executed the plea agreement that waived Petitioner's right to a jury trial and Petitioner, while under oath, personally waived his right to a jury trial at his change of plea hearing.

"To be valid, a defendant's waiver of the Sixth Amendment right to a jury trial must be voluntary, knowing, and intelligent." *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018). "In most cases, adherence to the dictates of [Federal Rule of Criminal Procedure] 23(a) creates the presumption that the waiver was voluntary, knowing, and intelligent." *United States v. Bishop*, 291 F.3d 1100, 1113 (9th Cir. 2002). Rule 23(a) provides the following: "If the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a). A Rule 23(a) waiver is presumed effective only if the defendant—rather than the defendant's attorney— executes the waiver. *Laney*, 881 F.3d at 1107–08. For example, in *Laney*, the defendants' attorney stipulated to a bench trial and waived the defendants' right to a jury trial, but the stipulation lacked the defendants' signatures. *Id.* at 1108. Thus, the jury trial waivers were not presumptively voluntary, knowing, and intelligent. *Id.*

In the plea agreement in the instant case, which Petitioner personally signed, Petitioner expressly waived his right to a jury trial:

> I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

Plea Agreement ¶ 3. In addition, at the April 24, 2017 change of plea hearing, Petitioner waived his right to a jury trial under oath:

THE COURT: First, do you understand that you have the right to a jury trial?
THE DEFENDANT: Yes.
THE COURT: Do you give up that right?
THE DEFENDANT: Yes.
THE COURT: Do you understand that you have the right to plead not guilty?
THE DEFENDANT: Yes.
THE COURT: Do you give up that right?
THE DEFENDANT: Yes.

*Id.* at 7:20-8:4. Therefore, Petitioner's Rule 23(a) waiver of his right to a jury trial was presumptively effective because Petitioner executed the waiver in his plea agreement and, unlike in *Laney*, Petitioner confirmed under oath that he waived his right to a jury trial and his right to plead not guilty. *See Laney*, 881 F.3d at 1108. Petitioner identifies no instance in which Leeming rather than Petitioner waived Petitioner's right to a jury trial.

Instead, Petitioner appears to contend that Leeming's stipulations to exclude time under the Speedy Trial Act are tantamount to Leeming waiving Petitioner's right to a jury trial. *See* Mot. at 9 ("defense counsel – without Mr. Guntipally's written consent – personally stipulated to Mr. Guntipally's waivers to a jury trial"). However, Petitioner conflates two separate rights. The Speedy Trial Act, 18 U.S.C. § 3161, does not address a defendant's Sixth Amendment right to a jury trial. The Speedy Trial Act protects a defendant's Sixth Amendment right to a *speedy* jury trial. *See Betterman v. Montana*, 136 S. Ct. 1609, 1616 (2016) (explaining that in general, the Speedy Trial Act directs "that no more than 30 days pass between arrest and indictment and that no more than 70 days pass between indictment and trial") (internal citations omitted). Thus, in the instant case, the Court did not vacate Petitioner's jury trial when Leeming stipulated to exclude time under the Speedy Trial Act. *See* ECF No. 108 (stipulation to exclude time). The exclusion of Speedy Trial Act time merely affected the date of Petitioner's jury trial. Rather, the Court vacated the jury trial only after Petitioner pled guilty and personally waived his right to a jury trial in both his plea agreement and under oath at the April 24, 2017 change of plea hearing. ECF No. 156 (vacating trial after Petitioner pled guilty and waived his right to a jury trial).

Therefore, because Leeming did not in fact waive Petitioner's right to a jury trial, Petitioner has failed to satisfy the first prong of *Strickland* and to show that Leeming's

performance fell below an objective level of reasonableness.  Accordingly, the Court denies Petitioner's claim for relief premised on Petitioner's waiver of his right to a jury trial.

### 2. Petitioner's Claims That Leeming Forced Petitioner to Plead Guilty

Second, in passing, Petitioner's § 2255 motion raises several related allegations that Leeming was ineffective for coercing Petitioner to plead guilty.  Specifically, Petitioner argues the following: (1) Leeming failed to file a motion for a bill of particulars or obtain full discovery from the government; (2) Leeming failed to obtain an expert witness and did not understand Petitioner's case; (3) Leeming misrepresented the potential risks of trial to coerce a guilty plea and conceal Leeming's lack of preparedness.  Mot. at 8–9.  All three allegations fail to meet the *Strickland* standard.

### a. Leeming's Discovery Performance Was Not Deficient

First, Petitioner contends that Leeming accepted the government's version of events, failed to conduct discovery, and should have filed a motion for a bill of particulars.  However, the record contradicts Petitioner's allegation that Leeming failed to conduct discovery in this case, or that Leeming's discovery performance was otherwise deficient.

In a declaration, Leeming explains that he and Paul Meltzer—Sunitha's defense attorney—created a Dropbox account to share discovery with Petitioner and Sunitha: "Mr. Meltzer and I established a Dropbox account for this case and I specifically made sure that both Mr. and Mrs. Guntipally had the ability to view and comment on the contents of that account."  ECF No. 333-1 ("Leeming Decl."), ¶ 7.  The record confirms Leeming's declaration.  In a December 31, 2014 email, Petitioner responded to discovery that Leeming shared via Dropbox and affirmed that Petitioner had accessed the materials: "I could download it successfully."  ECF No. 333-1, Ex. 3.  Later, in an October 9, 2015 email to Leeming, Petitioner affirmed that he had received additional discovery: "Yes, I got the email from Dropbox and downloaded the files."  ECF No. 333-1, Ex. 4.

Petitioner's second defense attorney, Martín Sabelli, characterized the discovery that Leeming obtained in this case as "voluminous" in an April 19, 2018 filing: "Undersigned defense

15

counsel substituted in as counsel on March 13, 2018. He then undertook review of the voluminous discovery in this matter in consultation with former counsel." ECF No. 254 at 1.

Furthermore, Meltzer's declaration corroborates that Leeming and Meltzer obtained extensive discovery from the government even before Petitioner and Sunitha were indicted: "The government provided extensive discovery early in this process, which I reviewed with my co-counsel, Peter Leeming (who represented Mrs. Guntipally's husband and co-defendant, Venkat Guntipally). The discovery was produced and shared with both defendants." ECF No. 315 ("Meltzer Decl."), ¶ 8; *see also id.* ¶ 11 (stating that information posted to the Dropbox account included interview reports, witness proffers, and many files and emails recovered from Petitioner's and Sunitha's computer). For example, on May 12, 2015, Meltzer wrote in an email to Petitioner, Sunitha, and Leeming that Meltzer and Leeming wanted to share a long and detailed government presentation with Petitioner and Sunitha: "We sat through a long and detailed presentation by the case agent at the US Attorney's office. We have copies of the power point and we would like to meet with you and Venkat tomorrow at either 11, 12 or 1 pm at my office to go over it." ECF No. 318, Ex. 2. Therefore, the record contradicts Petitioner's contention that Leeming failed to conduct discovery.

As for Petitioner's contention that Leeming should have filed a motion for a bill of particulars or other discovery motion, Leeming informed Petitioner in a December 1, 2016 email that Leeming was "working on a motion for a bill of particulars." ECF No. 298, Ex. 1. However, Leeming chose not to file a motion for a bill of particulars because "the benefits that such a motion might have conferred were obtained by other means." Leeming Decl. ¶ 6. For example, Leeming served subpoenas on financial institutions to prove that although Petitioner drove "P.R." to a bank in furtherance of obstructing justice, another co-defendant was the one who provided the funds to P.R.—contrary to the government's initial version of events. Leeming Decl. ¶ 6. Thus, Leeming was able to use other means to discover information beneficial to Petitioner. Petitioner also makes the conclusory allegation that Leeming should have filed other motions, but never identifies a

specific motion that Leeming should have filed other than a motion for a bill of particulars.

To the extent that Petitioner contests Leeming's decision not to file a motion for a bill of particulars or other unidentified motion, under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 690). Leeming made the strategic decision not to file a motion for a bill of particulars because Leeming was able to obtain information by other means, such as by subpoena. Leeming Decl. ¶ 6. Accordingly, Petitioner has failed to demonstrate that Leeming conducted no discovery or accepted the government's version of events, or that Leeming's performance with respect to discovery fell below an objective level of reasonableness.

Petitioner has also failed to satisfy the second prong of *Strickland*, that Petitioner was prejudiced by counsel's representation. Most importantly, Petitioner has not identified any specific discovery that Leeming failed to obtain, or explained what Leeming could have obtained via a motion for a bill of particulars (or other unspecified motion) that Leeming did not otherwise obtain. Petitioner asserts in a declaration that Leeming could have discovered via a motion for a bill of particulars that Petitioner did not provide P.R. with funds, contrary to the indictment. ECF No. 298 ("Petitioner Decl."), ¶ 6. However, Leeming discovered that information via subpoenas to financial institutions. Leeming Decl. ¶ 6. Therefore, Petitioner has not shown that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**b. Leeming's Decision to Not Hire an Expert Witness Did Not Violate *Strickland***

Second, Petitioner contends that Leeming failed to hire an expert witness "to address my defense regarding the H1-B [sic] program and staffing business operating procedures." Guntipally Decl. ¶ 7. In a declaration, Leeming explains that he addressed that potential defense by asking Sunitha to prepare a spreadsheet that listed H-1B applicants through Petitioner and Sunitha's companies and their purported end employers. Leeming Decl. ¶ 8; *see* Ex. 5 (spreadsheet).

According to Leeming, that spreadsheet and witness testimony "established that the purported jobs and the companies were not real" and Petitioner's actions "established that he was well aware that the end companies in the majority of the petitions were not real." *Id.* Thus, Leeming chose not to hire an expert witness because an expert could actually harm Petitioner's case: "In fact, an expert witness who was aware of the facts could have been used by the prosecution to establish that the locations in the petitions were fake companies that did not exist." *Id.* Leeming's decision not to hire an expert witness was a strategic choice that does fall below an objective level of reasonableness. *See Knowles*, 556 U.S. at 124 (explaining that under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Petitioner also fails to satisfy the second *Strickland* prong, that Petitioner was prejudiced by counsel's representation. Petitioner fails to explain how an expert witness would have assisted Petitioner's defense. Petitioner contends that Petitioner and Sunitha "did not know that the end client companies are fake and they do not have jobs before submitting the H-1B petitions." Petitioner Decl. ¶ 7. However, as Leeming declared, the evidence in the case and Petitioner's actions "established that he was well aware that the end companies in the majority of the petitions were not real." Leeming Decl. ¶ 6. As such, Petitioner also admitted in the plea agreement that "[t]he end-client companies listed in our H-1B applications—including two companies that I controlled, Traction HQ and Technia Energy—either did not exist or never received the proposed H-1B workers." Plea Agreement ¶ 2. Against that specific admission, Petitioner presents only his own post-plea, self-serving declaration that Petitioner was unaware of the fraud, which fails to demonstrate that if Leeming hired an expert witness, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**d. Leeming Did Not Make Misrepresentations that Coerced Petitioner's Guilty Plea**

Third, Petitioner contends that Leeming made two misrepresentations to rush Petitioner into a guilty plea. Specifically, Petitioner contends that (1) Leeming informed Petitioner that the

government might force Sunitha to testify against Petitioner if Petitioner went to trial; and (2) Leeming informed Petitioner that "if you are convicted you would get more than 5 years jail time." Petitioner Decl. ¶¶ 3, 8.

However, the lone email that Petitioner attaches to his reply contradicts Petitioner's allegation that Leeming threatened that Sunitha might testify against Petitioner. In an April 17, 2017 email, Leeming told Petitioner that Leeming had met with the government and that Leeming that raised the possibility of trial:

> I did raise the issue of you being able to try the case to a jury given the minimal evidence against you. He disagreed, quite strongly. Without explicitly saying so, he mentioned that others were ahead of you and Sunitha in the plea process and we should expect them to testify against you if a trial were to occur. He gave no specifics beyond that, but as you know we think that at least one of the co-defendants is cooperating and I have no reason not to believe that all of them are.

ECF No. 358, Ex. 1. In that email, Leeming did not tell Petitioner that Sunitha could testify against Petitioner, but rather that those "ahead of you and Sunitha"—i.e., co-defendants *other than Sunitha* (such as Kondamoori and Ramireddi)—could testify against Petitioner at trial. Moreover, Sunitha was not "ahead" of Petitioner in the plea process, as Sunitha pled guilty on May 3, 2017, nine days after Petitioner's April 24, 2017 guilty plea. *See* ECF No. 163. Petitioner identifies no instance in which Leeming told Petitioner that Sunitha could testify against Petitioner. To the contrary, Leeming declares that he and Meltzer advised Petitioner and Sunitha of the marital privilege and attorney-client privilege shortly after Petitioner retained Leeming. Leeming Decl. ¶ 4.

Petitioner's second allegation, that Leeming misrepresented Petitioner's potential prison sentence if Petitioner went to trial, is also contradicted. Leeming declares that even before indictment, Petitioner and Sunitha wished to negotiate a plea agreement because "[b]oth were very concerned about minimizing their sentencing exposure." Leeming Decl. ¶ 3. Leeming informed Petitioner that Petitioner "could face additional prison time if he were convicted at trial, because it was true." *Id.* ¶ 9. Indeed, after Petitioner pled guilty, the government recommended a mid-

Guidelines sentence of 33 months in custody, including an adjustment for acceptance of responsibility. ECF No. 267 at 1, 4. Petitioner ultimately received a 30-month sentence. ECF No. 274. Yet if Petitioner had gone to trial, Petitioner likely would not have received an acceptance of responsibility adjustment and faced a maximum potential sentence of 60 months for a conviction under 18 U.S.C. § 371 and a maximum potential sentence of 20 years for a conviction under 18 U.S.C. § 1341. *See* ECF No. 112-2. Therefore, Petitioner was not coerced to plead guilty by a misrepresentation, as Petitioner identifies no evidence that Leeming informed Petitioner that Sunitha would testify against Petitioner at trial or that Leeming misrepresented Petitioner's potential sentencing exposure if Petitioner went to trial.

Moreover, the record contradicts Petitioner's general allegation that Leeming coerced Petitioner into pleading guilty. Leeming declares that "Mr. Guntipally was always clear with me that he did not want to go to trial and wanted to resolve his case as favorably as possible." Leeming Decl. ¶ 12. According to both Leeming and Meltzer, after reviewing the pre-indictment discovery in this case, Petitioner and Sunitha both decided to plead guilty: "Both Mr. and Mrs. Guntipally agreed to plead guilty to the single count of conspiracy charged in the criminal complaint prior to their indictment after extensive discussions and a careful review of the available evidence." Leeming Decl. ¶ 3; *see also* Meltzer Decl. ¶ 18 (explaining that in April 2016, Petitioner and Sunitha both agreed to plead guilty to a charge of conspiracy under 18 U.S.C. § 371). The record includes email discussions between Petitioner, Leeming, Sunitha, and Meltzer about potential plea agreements as early as August 3, 2015. *See* ECF No. 318, Ex. 3 at 7.

Furthermore, the plea record in the instant case—which contains Petitioner's repeated admissions of guilt—constitutes a formidable barrier to Petitioner's collateral attack on his guilty plea. Although not insurmountable, overcoming that barrier requires more than conclusory allegations. *See Blackledge v. Allison*, 431 U.S. 63 (1997). This is because the statements that Petitioner made under oath and in open court are accorded significant weight. "[S]olemn declarations in open court carry a strong presumption of verity." *Shah v. United States*, 878 F.2d

Case No. 16-CR-00189-LHK-2; Case No. 19-CV-00098-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE UNDER 28 U.S.C. § 2255

1156, 1162 (9th Cir. 1989) (quoting *Blackledge*, 431 U.S. at 74).

In the instant case, Petitioner admitted his guilt under oath at the April 24, 2017 change of plea hearing.  *See Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth.").  Specifically, the government gave an offer of proof, including the following:

> Further, your honor, the government could also show beyond a reasonable doubt that beginning in or about the year 2014, Mr. Guntipally, together with Sunitha Guntipally and others, submitted, and caused to be submitted, more than 100 phony H-1B visa applications by means of mailings to the Department of Homeland Security, for temporary non-immigrant beneficiaries sponsored by petitioning companies DS Soft Tech, Equinett, and SISL Networks.

*Id.* at 14:13-21.  Petitioner affirmed that the facts in the government's offer of proof were true:

> THE COURT: Mr. Guntipally, do you hear and understand – did you hear and understand the facts the government is prepared to prove?
> THE DEFENDANT: Yes.
> THE COURT: Sir, are those facts true and correct?
> THE DEFENDANT: Yes.

*Id.* at 21:14-19.  Then, Petitioner pleaded guilty:

> THE COURT: What is your plea to count one of the indictment, which alleges that beginning at least in or about January 2010, and continuing through at least in or about June 2014, in the Northern District of California and elsewhere, you and others conspired to commit visa fraud, use of false documents, mail fraud, obstruction of justice and witness tampering in violation of 18 United States Code, Section 371?
> THE DEFENDANT: Yes.
> THE COURT: What's your plea, sir?
> THE DEFENDANT: Guilty.

*Id.* at 21:20-22:5.

Likewise, in the plea agreement, Petitioner admitted that he helped submit more than 100 phony H-1B visa applications:

> Beginning in or about 2010 and continuing through in or about 2014, I, together with Sunitha and others, submitted, and caused to be submitted, more than 100 phony H-1B visa applications by means of mailings to the Department of Homeland Security, for temporary nonimmigrant beneficiaries sponsored by petitioning companies DS Soft Tech, Equinett, and SISL Networks.

United States District Court
Northern District of California

Plea Agreement at ¶ 2.  Petitioner also admitted that he had taken actions to obstruct the government's investigation into the visa fraud scheme:

> Moreover, on or about April 5, 2014, after I became aware of the government's investigation into my conduct, I instructed P.R. to write checks to DS Soft Tech and to Equinett in an effort to make it appear that Traction HQ was engaged in business with DS Soft Tech and with Equinett, when in fact no such business had occurred.  I undertook this action in an effort to mislead the agents, conceal the conspiracy, and otherwise obstruct the government's investigation.

*Id.*

Furthermore, after Petitioner's guilty plea and after Petitioner retained a new attorney, Martín Sabelli, Petitioner continued to admit his guilt.  That is so even though Petitioner does not accuse *Sabelli*—only Leeming—of ineffective assistance or of coercing Petitioner to maintain his guilty plea.

On March 30, 2018, Sabelli informed the government that Petitioner was considering filing a motion to withdraw his guilty plea.  Lerman Decl., Ex. 3.  Then, on April 12, 2018, after Sabelli reviewed the discovery and discussed the case with Petitioner, Sabelli informed the government that Petitioner would not file a motion to withdraw and would proceed with sentencing.  Lerman Decl., Ex. 4.  Likewise, on April 19, 2018, Sabelli informed the Court that after Sabelli "undertook review of the voluminous discovery in this matter," and after Sabelli had "answered Mr. Guntipally's questions and addressed his concerns," Petitioner was ready to proceed with sentencing.  ECF No. 254 at 1.

Petitioner also admitted at a May 17, 2018 proffer session that "he had participated in the fraud scheme and knew he was committing fraud from at least 2011 onward."  Lerman Decl., Ex. 1.  In his June 6, 2018 sentencing memorandum, Petitioner stated that he "accepts responsibility for his conduct and for the numbers of visas processed and acknowledges the applicability of the nine-point upward adjustment in the guidelines for more than 100 visas processed."  ECF No. 268 at 5.  Finally, at his June 13, 2018 sentencing hearing, Petitioner again admitted his guilt: "I fully accept responsibility for my actions for what I did in this case.  I'm not proud of what I have done

United States District Court
Northern District of California

and think every night about what I've done." 6/13/18 Tr. at 18:12-14.

Petitioner's conclusory assertions that Leeming was unprepared and failed to discuss the plea agreement with Petitioner are also contradicted by the plea record. In his plea agreement, Petitioner affirmed that he had discussed the case, evidence, and plea agreement with Leeming: "I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested." Plea Agreement ¶ 21. Petitioner also affirmed that his guilty plea was voluntary: "I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plea guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement." *Id.* ¶ 23.

Under oath at the April 24, 2017 change of plea hearing, Petitioner affirmed that Petitioner read and understood his plea agreement and that Petitioner had discussed the plea with Leeming:

> THE COURT: Did you read your plea agreement?
> THE DEFENDANT: Yes, I did.
> THE COURT: Do you understand your plea agreement?
> THE DEFENDANT: Yes, your honor.
> THE COURT: Have you had enough time to discuss the plea agreement with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: Has your attorney been able to answer your questions about the plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: Are you satisfied with the services your attorney has provided to you?
> THE DEFENDANT: Yes.

4/24/17 Tr. at 4:9-21. Petitioner explicitly affirmed that his guilty plea was voluntary:

> THE COURT: Has anyone made any threats against you to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Is your decision to plead guilty free and voluntary?
> THE DEFENDANT: Yes.

*Id.* at 5:13-18.

Petitioner's assertions that Leeming coerced Petitioner into pleading guilty are not credible

23

in light of the extensive evidence in the record that Petitioner understood the consequences of pleading guilty and agreed to the terms of the plea agreement. Therefore, the Court finds that Petitioner has not shown that Leeming's performance fell below an objective standard of reasonableness such that Petitioner's plea should be deemed involuntary. Petitioner has failed to satisfy the first prong of *Strickland*. Accordingly, the Court denies Petitioner's claim for relief premised on Petitioner's allegations that Petitioner's guilty plea was coerced.

Finally, because none of Petitioner's individual claims of ineffective assistance have merit, the Court denies Petitioner's claim for relief premised on Petitioner's allegation that the "cumulative effect" of Leeming's alleged errors rendered Petitioner's guilty plea involuntary.

### B. Petitioner's *Brady* Claims Are Not Meritorious

In two supplemental documents filed after Petitioner's § 2255 motion, Petitioner asserts that the government failed to disclose exculpatory evidence in violation of *Brady*. ECF Nos. 303, 306. Petitioner asserts that the government withheld two specific documents from Petitioner: (1) his co-defendant Ramireddi's December 27, 2017 motion to vacate her conviction under 28 U.S.C. § 2255, ECF No. 225; and (2) his wife Sunitha's January 4, 2019 motion to withdraw her guilty plea, ECF No. 296. However, the government withheld neither document, each of which was publicly filed on the docket in Petitioner's case.

Under *Brady* and its progeny, the prosecution has a duty to disclose evidence favorable to an accused, and the failure to disclose such evidence violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). The prosecution's duty under *Brady* encompasses both impeachment evidence and exculpatory evidence. *Id.*; *accord United States v. Bagley*, 473 U.S. 667, 676 (1985). Thus, a *Brady* violation requires showing three components: (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently," and (3) the evidence was material, such

United States District Court
Northern District of California

United States District Court
Northern District of California

that the "result of the trial would have been different" had the evidence been disclosed to the defense. *Id.* at 281–82, 289.

In the instant case, the government did not withhold evidence from Petitioner. Neither document—Ramireddi's December 27, 2017 § 2255 motion and Sunitha's January 4, 2019 motion to withdraw guilty plea—existed at the time of Petitioner's April 24, 2017 guilty plea. Thus, neither document could have affected Petitioner's decision to plead guilty. Sunitha's January 4, 2019 motion to withdraw guilty plea was filed even after Petitioner's June 13, 2018 sentencing. Petitioner does not explain how Sunitha's motion to withdraw guilty plea could have affected Petitioner's decisions to plead guilty and to proceed with sentencing.

In addition, both documents were filed on the public docket in Petitioner's case. On December 27, 2017, Ramireddi filed her pro se § 2255 motion on the public docket, and the motion generated an ECF notification to Petitioner's then-attorney, Leeming. ECF No. 333-14 ("Schenk Decl."), Ex. 2. The Court then denied Ramireddi's § 2255 motion. ECF No. 223. Ramireddi never appealed her conviction or the Court's denial of her § 2255 motion. On January 4, 2019, Sunitha filed her motion to withdraw guilty plea on the public docket. ECF No. 296. In addition, Petitioner—Sunitha's husband—was in the courtroom on December 18, 2018 when Sunitha announced her intent to move to withdraw her guilty plea. Lerman Decl. ¶ 8.

Moreover, contacts between Sunitha and Petitioner in the months before Petitioner and Sunitha filed their near-simultaneous motions raise the strong inference that Petitioner and Sunitha coordinated Petitioner's § 2255 motion with Sunitha's motion to withdraw guilty plea. Petitioner and Sunitha exchanged almost 200 phone calls in the four months preceding Sunitha's motion to withdraw guilty plea (and Petitioner's near-simultaneous § 2255 motion). ECF No. 302-3. For example, in a November 30, 2018 email with the subject line "Ask Bill," Sunitha emailed Petitioner a list of statements and questions relating to Petitioner's § 2255 motion, including "you did not do anything but they gave you 9 points" and "how much time will it take for 2255." ECF No. 364, Ex. 3 at 10.

In a later email sent on December 5, 2018, Sunitha appeared to send Petitioner a draft declaration to accompany his § 2255 motion. *See* ECF No. 363, Ex. 5. For example, the email refers to "me and my wife," then lists allegations about ineffective assistance of counsel and refers to "Peter" (presumably Peter Leeming, Petitioner's attorney). *Id.* at 1. The email also states that the attorney said "codefendant became government witness and will testify against you" and "Speedy trial is there, ask to check that." *Id.* at 2.

Consistent with Sunitha's December 5, 2018 email, Petitioner's January 7, 2019 § 2255 motion and accompanying declaration allege that Leeming provided ineffective assistance based in part on a speedy trial claim, ECF No. 298 at 9, and in part on Leeming's advice to Petitioner that Petitioner's codefendants might testify against Petitioner if Petitioner went to trial. ECF No. 298, Ex. 1 at ¶ 3. The emails thus raise the strong inference that Petitioner's § 2255 motion was coordinated with Sunitha's motion to withdraw guilty plea, and thus that Petitioner was aware of Sunitha's motion to withdraw guilty plea even before its filing on the public docket.

It is well established that "if the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the government's failure to bring the evidence to the direct attention of the defense does not constitute suppression." *Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013). As such, courts have consistently rejected arguments that the government suppressed documents posted on public court dockets. *See, e.g.*, *Matthews v. Ishee*, 486 F.3d 883, 890–91 (6th Cir. 2007) (rejecting claim that prosecution withheld public information about an informant's sentencing); *United States v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015) (rejecting claim that prosecution suppressed a lawsuit and settlement in a different case because the defendant "could have accessed the settlement at any point . . . through the exercise of due diligence").

Petitioner's claim is even further afield than *Matthews* and *Shields*. Petitioner alleges that the government suppressed documents filed on the public docket in *his own case*. Petitioner also alleges that the government suppressed a motion that Petitioner's wife filed, even though

Petitioner exchanged almost 200 phone calls with Sunitha in the months leading to that motion and Petitioner attended the hearing at which Sunitha stated that she planned to file a motion to withdraw guilty plea. Because Petitioner was well aware of the essential facts relating to Ramireddi's § 2255 motion and Sunitha's motion to withdraw guilty plea, Petitioner has not shown that the government suppressed evidence under *Brady*.

Therefore, the Court denies Petitioner's request for relief premised on *Brady*.

### C. Petitioner's Challenge to the Constitutionality of 18 U.S.C. § 371 is Waived, Barred, and Lacks Merit

In an amendment to his § 2255 motion, Petitioner contends that the statute of conviction, 18 U.S.C. § 371, is unconstitutionally vague. ECF No. 385. Petitioner states that this amendment raises a claim of "actual innocence." *Id.* The government contends that Petitioner waived any challenge to the constitutionality of 18 U.S.C. § 371 in Petitioner's plea agreement, that Petitioner procedurally defaulted this claim, and that Petitioner's claim fails on its merits. The Court agrees in all three respects.

First, Petitioner waived his right to challenge the constitutionality of 18 U.S.C. § 371. The waiver of the right to collaterally attack a conviction or sentence is enforceable if the waiver "was express, knowing, and voluntary." *United States v. Reves*, 774 F.3d 562, 566 (9th Cir. 2014). The scope of a waiver is determined by reference to the waiver's "express language." *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016).

In the instant case, Petitioner's plea agreement expressly waives *any* collateral attack, with the sole exception of Petitioner's right to claim ineffective assistance of counsel: "I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective." Plea Agreement ¶ 5.

In the plea agreement, Petitioner also affirmed that his guilty plea and waiver were voluntary: "I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of

Case No. 16-CR-00189-LHK-2; Case No. 19-CV-00098-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE UNDER 28 U.S.C. § 2255

proceeding to trial. I also confirm that my decision to plea guilty is made voluntarily, and no one

coerced or threatened me to enter into this Agreement." *Id.* ¶ 23. Petitioner affirmed that waiver

under oath at his April 24, 2017 change of plea hearing:

> THE COURT: Do you understand that in paragraph 5 of your plea agreement, you
> agree not to file any collateral attack on your conviction or sentence, including a
> petition under 28 United States Code, Sections 2255 or 2241, except you keep the
> right to claim that your lawyer was not effective. You also agree not to seek relief
> under 18 U.S.C., Section 3582. Do you understand that, sir?
> THE DEFENDANT: Yes.
> THE COURT: Is that what you wish to do?
> THE DEFENDANT: Yes.

Tr. at 10:21-11:6. Thus, the Court finds that Petitioner waived his right to challenge the

constitutionality of 18 U.S.C. § 371.

Nonetheless, Petitioner attempts to shoehorn his constitutional claim into the ineffective

assistance exception. Petitioner briefly argues that "defense counsel was ineffective for not

objecting to the government's overreaching power to criminalize Petitioner's admitted conduct."

ECF No. 385 at 6–7. Aside from that sentence, however, Petitioner never develops his argument

that his attorneys—Leeming and Sabelli—were ineffective. Petitioner never identifies how his

attorneys could have objected or attempts to explain how such an objection would have changed

the outcome of Petitioner's case. *See Strickland*, 466 U.S. at 687. Instead, Petitioner simply

argues that 18 U.S.C. § 371 is unconstitutionally vague. The Court rejects Petitioner's cursory

attempt to refashion his vagueness claim as an "ineffective assistance" claim, and finds that

Petitioner waived his claim that 18 U.S.C. § 371 is unconstitutionally vague.

Second, the government contends that Petitioner procedurally defaulted his vagueness

claim because Petitioner never raised the claim on direct appeal. "To challenge a conviction in a §

2255 proceeding based upon a claim of error that could have been raised on direct appeal but was

not, a defendant must demonstrate both cause to excuse the procedural default, as well as actual

prejudice resulting from that error." *United States v. Seng Chen Yong*, 926 F.3d 582, 590 (9th Cir.

2019). In *Yong*, for example, the petitioner never appealed his conviction, but then sought to

challenge the voluntariness of his guilty plea in a § 2255 motion. *Id.* In the instant case, Petitioner never appealed his conviction. Although there is an exception to the procedural default bar for ineffective assistance claims, *United States v. Ratigan*, 351 F.3d 957, 964–65 (9th Cir. 2003), Petitioner's instant claim that 18 U.S.C. § 371 is unconstitutionally vague does not fall under that exception.

In addition, Petitioner casts the claim in his amendment to his § 2255 motion as a claim of "actual innocence," in an apparent attempt to avoid the procedural default bar. There is a limited exception to the procedural default bar for claims of "actual innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To bring such a claim, a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.*

Petitioner never explains why no reasonable juror would have convicted Petitioner had Petitioner proceeded to trial. Nor has Petitioner shown that any subsequent decision on the scope of 18 U.S.C. § 371 rendered Petitioner actually innocent of the statute of conviction. *See United States v. Avery*, 719 F.3d 1080, 1086 (9th Cir. 2013) (vacating sentence where the government conceded that the petitioner was "actually innocent of honest services fraud" in light of a subsequent United States Supreme Court decision limiting the reach of that statute). Therefore, the Court finds that Petitioner has procedurally defaulted his vagueness claim.

Finally, even if Petitioner had not both waived and defaulted his claim that 18 U.S.C. § 371 is unconstitutionally vague, Petitioner's vagueness claim lacks merit. Petitioner's statute of conviction, 18 U.S.C. § 371, criminalizes conspiracies against the United States:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The statute has been broadly interpreted to criminalize "any willful impairment

29

of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute." *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989). That interpretation of the statute dates back to at least 1924, decades before Petitioner and his co-defendants perpetrated the visa fraud scheme in the instant case. *Tanner v. United States*, 483 U.S. 107, 128 (1987) (citing cases dating back to 1924).

A criminal statute is "void for vagueness if it is not sufficiently clear to provide guidance to citizens how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* (citation omitted) (alteration in original). In such an instance, a defendant's as-applied vagueness challenge "turns on whether the statute provided adequate notice to him that his particular conduct was proscribed." *Id.*

Petitioner argues that 18 U.S.C. § 371 is vague to the extent that the statute criminalizes a crime with no victims. *See* ECF No. 385 at 12 (contending that 18 U.S.C. § 371 is void for vagueness "because it is too vague for the average citizen to understand that one can be guilty of Title 18, either with or without having victims"). Petitioner does not actually raise any arguments about the text of 18 U.S.C. § 371; instead, Petitioner relies on the premise that his crime had no victims.

For that premise, Petitioner focuses on one sentence in his Presentence Investigation Report, in which the U.S. Probation Officer wrote: "This is a Title 18 offense and there is no identifiable victim." ECF No. 271, ¶ 53. However, the U.S. Probation Officer went on to emphasize that although no specific victim was *identifiable*, Petitioner's crime harmed the United States and harmed other employment staffing firms:

> Nevertheless, it should be noted that widespread immigration fraud, such as the instant offense, risks the public's trust in the integrity of the immigration system, thereby making it more difficult for law-abiding citizens to come to this country and for companies wishing to hire H-1B visa workers. Furthermore, the Court could consider the other employment staffing firms as victims, as they were placed in a

disadvantageous position as a result of the defendant's fraudulent scheme.
*Id.* Indeed, Petitioner himself admitted in his plea agreement that "[t]hrough this scheme, I, along with my co-conspirators, gained an unfair advantage over competing employment-staffing firms and, as a result, Sunitha and I earned ill-gotten gains from these downstream companies for ourselves and our companies." Plea Agreement ¶ 2. Thus, Petitioner's own statements and the record in this case contradict Petitioner's self-serving assertion that his crime was victimless.

Petitioner's other statements also contradict Petitioner's assertion that the statute provided inadequate notice that Petitioner's conduct was criminal. At a post-plea proffer, Petitioner admitted that he knew that the visa fraud scheme was criminal well before the government began investigating the scheme: "Venkat stated that he had participated in the fraud scheme and knew he was committing fraud from at least 2011 onward." Lerman Decl., Ex. 1 at 4. Moreover, once Petitioner learned that the government was investigating the visa fraud scheme, Petitioner took steps to obstruct justice and instructed P.R. to write fake checks "in an effort to mislead the agents, conceal the conspiracy, and otherwise obstruct the government's investigation." Plea Agreement ¶ 2; *see also* 4/24/17 Tr. at 20:19-21:19 (Petitioner admitting to same under oath at Petitioner's change of plea hearing). Petitioner cannot plausibly contend that Petitioner was unaware that the visa fraud scheme was criminal, given Petitioner's actions to conceal the visa fraud scheme from investigating federal agents. Thus, 18 U.S.C. § 371 is not unconstitutionally vague as applied to Petitioner.

Therefore, the Court denies Petitioner's request for relief predicated on his vagueness claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Petitioner's motion to set aside, correct, or vacate sentence under 28 U.S.C. § 2255. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

Dated: August 19, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No. 16-CR-00189-LHK-2; Case No. 19-CV-00098-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE UNDER
28 U.S.C. § 2255

United States District Court
Northern District of California