UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

UNITED STATES OF AMERICA,

v.                                                            Criminal No. 16-CR-189-LHK-2

VENKAT GUNTIPALLY,

    Defendant.
_____/

## MOTION TO TERMINATE SUPERVISED RELEASE

Pursuant to 18 U.S.C. § 3583(e)(1), Venkat Guntipally ("Guntipally") and respectfully moves this Honorable Court to terminate his term of Supervised Release. In support of this motion, Guntipally submits that has been on supervised release for 13 months and meets the statutory criteria for early termination. In addition, Guntipally submits the following in support of his early termination of supervised release:

    1.    **History of the Case and Post Offense Conduct**

Guntipally was the president of DS Soft Tech and Equinett, two Bay Area companies specializing as "staffing specialists" for the technology industry. He owned and controlled the two companies with his wife, codefendant Sunitha Guntipally, who served as vice president. "ran the operations of both companies on a daily basis" and "directed and controlled the activities of the employees in all their tasks." (Plea Agreement ¶ 2; see PSR ¶ 15). Between 2010 and 2014, the Guntipallys and their coconspirators submitted to the Department of Homeland Security more than one hundred H-1B visa applications for skilled workers. The defendants submitted petitions stating, under penalty of perjury, that the applicants would work at a variety of end-user companies, including those owned and controlled by codefendant Pratap "Bob" Kondamoori. The listed end-client companies either did not exist or never intended to

take the defendants' H-1B workers. Codefendant Sandhya Ramireddi worked 'for the Guntipallys and signed supporting documentation that accompanied numerous applications. The fraudulent visa applications contained information and supporting documentation that all of the defendants knew at the time to be false. (PSR ¶¶ 15–29; Plea Agreement ¶ 2).

October 2014 filed a criminal complaint against the Guntipallys and their coconspirators, Kondamoori and Ramireddi. The complaint was supported by an affidavit from Special Agent Richard Lin. No. 14-MJ-71358-MAG, ECF No. 1 (Oct. 27, 2014). A grand jury in May 2016 returned a 33-count indictment against the Guntipallys, Kondamoori, and Ramireddi. (ECF No. 112).[1] Guntipally pled guilty to conspiracy to commit visa fraud pursuant to a cooperation plea agreement. He admitted the facts outlined above, agreed that the obstruction enhancement applies to him, waived his right to file an appeal or collateral attack (apart from ineffective-assistance claims), and agreed to pay a $500,000 forfeiture money judgment. (Plea Agreement ¶¶ 2, 4–5, 14). Guntipally was sentenced to 30 months' imprisonment, three years' supervised release, and a $500,000 stipulated forfeiture money judgment. (ECF No. 273). No direct appeal was filed.

---

[1] Ramireddi cooperated with the government. She pleaded guilty first, on April 17, 2017, to one count of using false documents, in violation of 18 U.S.C. § 1001(a)(3) (count 18). With a substantial assistance motion from the government and a minor-role reduction, she received a sentence of 14 months' imprisonment and three years' supervised release. (ECF Nos. 153, 182). Kondamoori also cooperated with the government. He pleaded guilty on April 24, 2017, to conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371 (count one). With a substantial-assistance motion from the government, he received a sentence of 20 months' imprisonment and three years' supervised release. (ECF Nos. 158, 196). Sunitha Guntipally was the last defendant to plead guilty, on May 3, 2017. (ECF Nos. 161, 163). With the 4-level organizer/leader enhancement (USSG § 3B1.1(a)), she received a sentence of 52 months' imprisonment and three years' supervised release, plus a stipulated $50,000 fine. (ECF No. 206; see Tr. 11/29/2017 at 41).

## 2. Prison Adaptation

While incarcerated, Guntipally attended and completed courses, to assist him un his personal growth and eventual release from incarceration. All the BOP sponsored courses assisted Guntipally in his transition from BOP back into society as part of this Personal Individualized Re-Entry Plan:

- The Dad Difference Workshop
- National Fatherhood Initiative - Inside Out Dad
- RDAP "Residential Drug Abuse Treatment Program"

*Id.* (Exhibit A).

## 3. Post-Conviction Proceedings and BOP Release.

On January 17, 2019, Guntipally filed a Title 28 U.S.C. § 2255, raising several grounds to vacate his sentence and conviction. (ECF No. 297). On August 19, 2019, the court denied the motion. (ECF No. 401, 403). A request for certificate of appealability was also denied. See, *United States v. Guntipally*, No. 19-17208, 2021 U.S. App. LEXIS 1069 (9th Cir. Jan. 14, 2021); *reconsideration* and *en banc denied*, *United States v. Guntipally*, No. 19-17208, 2021 U.S. App. LEXIS 6420 (9th Cir. Mar. 4, 2021).

Guntipally was released from BOP custody on January 25, 2021.[2] After his release, he responded to the Probation Office in the Northern District of California and has been in supervision since January 25, 2021. His supervised release is being served incident free.

---

[2] https://www.bop.gov/inmateloc/

4.  **Post Release Employment**

Since March 15, 2021, Guntipally has been gainfully employed by Kelly Services Global, LLC, 999 W. Big Beaver Rd, Suite 401A, Troy, MI 48084 as a Scrum Master.[3] He currently works a total of 40 hours per week with overtime when available. Guntipally has been on supervised release for 13 months and he has complied with all conditions of release incident free. Guntipally has discussed this request with his Probation Officer who has voiced no concern.

## ARGUMENT

Title 18 U.S.C. § 3583(e)(1) provides that the Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *United States v. Ponce*, No. 21-30009, 2022 U.S. App. LEXIS 726, at *5 (9th Cir. Jan. 11, 2022) ("The correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e)." Section 3583(e)(1) "provides that, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" *Id.* (quoting 18 U.S.C. § 3583(e)(1)); *United States v. Nottingham*, No. 14-cr-00553-SI-1, 2022 U.S. Dist. LEXIS 36171, at *2 (N.D. Cal. Mar. 1, 2022) (When determining whether the defendant's

---

[3] A Scrum master serves as facilitators for agile teams working under the scrum methodology. Training, mentoring, and supporting scrum teams to follow agile values, principles, and practices. Determining and managing tasks, issues, risks, and action items. Scheduling and facilitating scrum events, meetings, and decision-making processes, and eliminating team impediments. Monitoring progress and performance and helping teams to make improvements. Planning and organizing demos and product/system testing. Preparing and presenting status reports to stakeholders.

4

conduct and the interest of justice warrant early termination of supervised release, the court "enjoys discretion to consider a wide range of circumstances"); *United States v. Moore*, No. 13-cr-00080-CW, 2022 U.S. Dist. LEXIS 20010, at *4 (N.D. Cal. Feb. 3, 2022) ("The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination"). Here the circumstances, warrant termination of supervised release.

Guntipally has no criminal history and no violence. He has now served over 13 months of supervised release and he is statutorily eligible for early termination. Such termination is in the interests of justice and is warranted based on Guntipally's conduct. Guntipally wishes to visit his elderly ailing parents that have been stricken with COVID19 and are suffering its devastating lingering side effects.[4] Mr. Guntipally Senior who is 76 years old, has suffered the devasting effects of COVID19 on two separate occasions, once on February 19, 2021 and again on January 2, 2022. (See Exhibit B, COVID19 results for father). As of this filing he is still suffering the side effects of COVID19 that is complicated with his diabetes. His mother Mrs. Bharathamma Guntipally, who is 71 years old, also tested positive and also requires medical care. (See Exhibit C, COVID19 results Mrs. Guntipally). Guntipally would like to travel to his family's hometown in Hyderabad, Telangana, India as needed to address these pressing matters with his elderly parents.

While Guntipally did commit serious offenses several years ago and he was never involved in any violent conduct. He gained a true appreciation for the far-reaching consequences of his actions and came to understand the preciousness of time with family and loved ones. He

---

[4] Although his father G. Anantha Chary tested positive in January 2022, there are still lingering effects that he is suffering. Due to his age and lack of proper medical care, Guntipally wishes to travel to visit his family and address his medical issues.

has demonstrated that he has accepted responsibility for his past criminal conduct, was appropriately punished with a substantial sentence of incarceration of 30 months. As of this filing, his supervising U.S. Probation Officer has voiced no concerns over Guntipally's supervision and has voiced no opposition over this request.

Guntipally is now fifty-three years old and has worked hard to build a law-abiding productive life for himself since release. Guntipally has received several wages increases since starting with Kelly Services Global, LLC, he works overtime when available. He is a reliable and valued employee. He is able to be independent and live a comfortable lifestyle and he is very proud of his accomplishments. The benefits of hard work and its rewards have been demonstrated to him in a very real way. He has demonstrated he has successfully transitioned to a productive life in the community. Continued supervised release is unnecessary for rehabilitation or security.

## CONCLUSION

Guntipally is currently scheduled to terminate Supervised Release on January 25, 2024. While the supervision reporting requirements are minimal, greater freedom of travel, especially out of the country is limited, if permitted at all. As a matter of personal pride, he would like to have the recognition for himself and his family that he has indeed been rehabilitated and become a valuable and hardworking member of this community. He has complied with all requirements for supervised release and he has exceeded the one year statutory requirement for early termination of supervised release.

Guntipally is appropriate for early termination of his Supervised Release because he has made a successful adjustment to his new life and demonstrated his rehabilitation. Neither justice or public safety requires supervision of this law-abiding, responsible citizen. It is his turn to

provide emotional and other support to his family. Further supervision is an unnecessary expense. As such, Guntipally respectfully prays this Honorable Court grant this request and terminate supervised release.

Done this 31, day of March 2022.

_(signature)_
Venkat Guntipally
37817 Laurus Court
Freemont, CA 94536

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY, that a true and correct copy of this motion was mailed to the recipients noted below sufficient First Class Postage:

United States Attorney's Office
NDCA, San Jose Division 150 Almaden Blvd., Suite 900
San Jose, CA 95113

Done this 31, day of March 2022

_(signature)_
Venkat Guntipally
37817 Laurus Court
Freemont, CA 94536

# Certificate of Achievement

Presented to

## Venkat Guntipally

For successfully completing
the residential portion of the

### Residential Drug Abuse Treatment Program at
### FPC Sheridan

This milestone, while significant, is not the completion of the treatment requirements for the RDAP program. He is hereby eligible to move forward to the follow-up and/or community treatment components of RDAP.

_____
Dr. Dougherty, DAP-C

O. Andrus, DTS; T. Brandon, DTS; D. Kocik, DTS; C. Yancey, DTS

5/29/2020
Date

Exhbit A

# Participant of the Week

This award of achievement goes to

## VENKAT GUNTIPALLY

for demonstrating treatment behaviors consistent with the program's goals and philosophy and is awarded this certificate by the RDAP treatment team

FPC Sheridan Residential Drug Abuse Program

On February 14, 2020

O. Andrus
*Drug Treatment Specialist*

# Participant of the Week

This award of achievement goes to

## VENKAT GUNTIPALLY

for demonstrating treatment behaviors consistent with the program's goals and philosophy and is awarded this certificate by the RDAP treatment team

On October 16, 2019

*P. Antonson*
Drug Treatment Specialist

FPC Sheridan Residential Drug Abuse Program

# Certificate of Completion

**This Certifies That**

Venkat Guntipalli
20028-11

**Has Successfully Completed a Parenting Class**

## The Dad Difference Workshop

**Given This Day** September 5, 2019

Mr. Price—Camp Unit Manager; Richard Dance-Instructor

This Dad Difference Workshop qualifies as a Parenting Class to meet the Bureau of Prisons recommendations as specified in your Personal Individualized Re-Entry Plan. It does not currently have a space in the Sentry System to be recorded, so this certificate provides notification to your Case Manager that you have completed the course.



**National Fatherhood Initiative®**
www.fatherhood.org

*Carlos Alcazar*
Chairman of the Board
NATIONAL FATHERHOOD INITIATIVE®

*Christopher A. Brown*
Executive Vice President
NATIONAL FATHERHOOD INITIATIVE®

# Certificate of Completion

This certifies that

**Venkat Guntipally**

has successfully completed the



Inside Out DAD — Second Edition

Program

Conducted on __8-13-2019 to 1-30-2020__

in __Federal Prison Camp Sheridan Oregon__

E. Hirsch / *(signature)*

Facilitator's Name/Signature

# KRISHNAVENI
## MULTI SPECIALITY HOSPITAL

### DISCHARGE SUMMARY

| | |
|---|---|
| Patient Name : Mr.G ANANTHA CHARY | IPNO : 04183 |
| Age : 74 Years    Sex : MALE | Admission Date : 19/02/2021 |
| Referred By : DIRECT | Admission Time : 15:42:59 |
| Consultant Doctor : DR. D. PRAMOD KUMAR M.D GEN MED.. GI | Discharge Date : 24/02/2021 |
| Bed No : 304 | Discharge Time : 19:20:19 |

**CONSULTANT DOCTORS:**

DR.PRAMOD KUMAR MD GENARAL MEDICINE
SR PHYSICIAN & DIABETOLOGIST.
DR.VENKATESHWAR REDDY MD. PULMONARY.
DR.MAZHEER NEUROPHYSICIAN.

**DIAGNOSIS:**
- VIRAL PYREXIA WITH THROMBOCYTOPENIA.
- LRTI.
- DMT2.
- G II BPH.

**CHIEF COMPLAINTS:**

A 74 YRS OLD MALE PT WAS ADMITTED WITH FEVER WITH CHILL, COUGH, SOB, BODY PAINS SINCE 4-5 DAYS.
- K/C/O DMT2.

**ON EXAMINATION:**
- PT-C/C
- BP-90/60MMPHG
- PR-68BPM
- SPO2-98%
- TEMP-100.1F
- P/A-SOFT,BS+
- H/L-S1S2
- BAE+

**INVESTIGATIONS:**

SERUM ELECTROLYTES, GLYCOSYLATED HAEMOGLOBIN (HBA1C), SERUM CREATININE, USG ABDOMEN, BEDSIDE (MALE), ERYTHROCYTE SEDIMENTATION RATE (ESR), MONTOUX TEST, PROSTATE SPECIFIC ANTIGEN, PULMONARY FUNCTION TEST (PFT), HRCT CHEST, 2D ECHO HAI BRAIN, BLOOD UREA, RETRO VIRAL SCREENING 1 &II, DENGUE IGG, LIVER FUNCTION TEST, BLOOD GROUPING AND RH TYPING, COMPLETE BLOOD PICTURE (CBP), DENGUE NQA, QUANTIFERON TUBERCULIN GOLD, MONTOUX TEST, SERUM CALCIUM.

**COURSE IN THE HOSPITAL:**

A 74 YRS OLD MALE PT WAS ADMITTED WITH ABOVE MENTIONED COMPLAINTS ALL NECESSARY INVESTIGATIONS WERE DONE AND DIAGNOSED AS VIRAL PYREXIA WITH THROMBOCYTOPENIA, LRTI, DMT2, G II BPH, TREATED UNDER CONSERVATIVE MEDICAL MANAGEMENT WITH IV FLUIDS, ANTIBIOTICS, ANTACIDS, ANTIEMETICS, ANTIPYRETICS, MULTIVITAMINS AND OTHER SUPPORTIVE CARE GIVEN. PULMONOLOGIST, NEUROPHYSICIAN OPINIAN TACKEN. MRI BRAIN DONE, CHRONIC SMALL VESSEL ISCHMIC CHAGES IN BILATERAL PERIVENTRICULAR AND SUBCORTICAL WHITE MATTER. HRCT CHEST SHOWS..MINIMAL? FIBROTIC CHANGES IN BILATERAL LOWER LOBES (LEFT > RIGHT), FEATURES UNLIKELY OF COVID 1 HIS FALLOWUP MEDICATION. PT CONDITION SATISFACTORY. VITALS AS STABLE. AT TIME OF DISCHARGE.

**CONDITION AT THE TIME OF DISCHARGE:**

PT DISCHARGED WITH STABLE VITALS.

Dr. D. PRAMOD KUMAR
M.D (GENERAL MEDICINE)
Physician





# 49-433/1/NR, RTC Colony Bus Stop, NH-63, Nayathipur, Hyderabad - 501 505, Phone : 040-2420 2343, Fax : 040-2420 1
Helpline : 91773 27173 | E-mail : krishnavenihospitals@yahoo.com ; Website : www.krishnavenihospitals.com



# Vijaya Diagnostic Centre

3-6-16 & 17, Street No. 19, Himayatnagar, Hyderabad - 500 029
Helpline : 040-21000000
Email : info@vijayadiagnostic.com
www.vijayadiagnostic.com

## LABORATORY TEST REPORT

| | | | | |
|---|---|---|---|---|
| Regn Date | : 01/02/2022  15:39 | | Sample Collection | : 01/02/2022  15:40 |
| Name | : MR. G ANANTHA CHARY | | Print Date | : 02/02/2022  14:01 |
| Regn No | : 97222897 | | Age / Sex | : 76 Years  / Male |
| Ref By | : SELF | | Regn Centre | : Mansoorabad - 97 |
| Sample Type | : Swab | | Ref no. | : S128654971233 |

### SARS-CoV-2 (3 GENE) - QUALITATIVE REAL TIME PCR

| TEST NAME | RESULT |
|---|---|
| **SARS-CoV-2** | : POSITIVE |
| **S gene** | : Not Detected |
| **N gene** | : 30.87 |
| **RdRp gene** | : 28.27 |

*Method: Real Time RT-PCR*

Limit of Detection :
Analytical lower unit of detection 10 copies of genome equivalents per reaction.

Interpretation :
--------------------
RdRp/ N gene Positive   : Indicates the presence of RNA specific to SARS CoV-2.
RdRp/ N gene Negative  : Indicates the absence of RNA specific to SARS CoV-2.
S gene Detected            : Indicates Presumptive Delta variant.
S gene Not Detected     : Indicates Presumptive Omicron variant.

Limitations & Comments :
* SARS CoV-2 Qualitative RT-PCR test is an in-vitro detection assay conducted on Nasopharyngeal/ Oropharyngeal specimens
  collected in viral transport media.
* This assay detects the confirmatory genes of SARS CoV-2 (RdRp and N gene) along with single specific mutation on
  S gene based on the WHO guidelines of S-gene Target Failure (SGTF) in the clinical samples provided.
* The test result must be correlated with clinical observations, patient travel history, vaccination status, immune status
  and other epidemiological information.
* From the appearance of symptoms, viral load reduces day by day. Due to varied shedding of virus, the result of repeat
  testing even within hours or days can yield different results.
* Negative results do not preclude SARS CoV-2 infection and should not be used as a sole basis for patient management.
* False negative results may occur in the presence of PCR inhibitors, low RNA quantity in the sample provided, mutations
  or polymorphisms in the primer and probe binding sites.
* False positive results may be due to cross reactivity with other microorganisms such as influenza virus.
  Repeat testing with fresh sample is suggested after two to four days if clinically suspicious.
* There is significant overlap of specific mutations of S gene in other/many variants of SARS CoV-2.
  For confirmation of results/definitive results, Whole Genome Sequencing is recommended.
* Viral nucleic acids may persist independent of virus viability even after complete disappearance of symptoms.
* CT cut off values are not absolute indication of viral load and should be interpreted with caution. CT cutoff values may vary from lab to lab.
* Current knowledge about novel corona virus is evolving and more studies may be required for further evaluation.

Note :
- ICMR-Registration Number : VIJAY001
- COVID-19 test is conducted with a kit approved by ICMR/CE-IVD/US-FDA.
- Kindly consult Referring Physician/Authorized Government Hospital for appropriate follow up.

**DR. VITTAL M.D**
**CONSULTANT MICROBIOLOGIST**



# Vijaya Diagnostic Centre

3-6-16 & 17, Street No. 19, Himayatnagar, Hyderabad - 500 029
Helpline : 040-21000000
Email : info@vijayadiagnostic.com
www.vijayadiagnostic.com

## LABORATORY TEST REPORT

| | | | | |
|---|---|---|---|---|
| Regn Date | : 02/02/2022  15:21 | Sample Collection | : | 02/02/2022  15:21 |
| Name | : MRS. G BHARATHAMMA | Print Date | : | 03/02/2022  08:19 |
| Regn No | : 97222953 | Age / Sex | : | 71 Years / Female |
| Ref By | : SELF | Regn Centre | : | Mansoorabad - 97 |
| Sample Type | : Swab | Ref no. | : | S128737529159 |

### SARS-CoV-2 (3 GENE) - QUALITATIVE REAL TIME PCR

| TEST NAME | RESULT |
|---|---|
| SARS-CoV-2 | : POSITIVE |
| S gene | : Not Detected |
| N gene | : 30.93 |
| RdRp gene | : 29.46 |

*Method: Real Time RT-PCR*

Limit of Detection :
Analytical lower unit of detection 10 copies of genome equivalents per reaction.

Interpretation :
--------------------
RdRp/ N gene Positive   : Indicates the presence of RNA specific to SARS CoV-2.
RdRp/ N gene Negative  : Indicates the absence of RNA specific to SARS CoV-2.
S gene Detected             : Indicates Presumptive Delta variant.
S gene Not Detected      : Indicates Presumptive Omicron variant.

Limitations & Comments :
* SARS CoV-2 Qualitative RT-PCR test is an in-vitro detection assay conducted on Nasopharyngeal/ Oropharyngeal specimens collected in viral transport media.
* This assay detects the confirmatory genes of SARS CoV-2 (RdRp and N gene) along with single specific mutation on S gene based on the WHO guidelines of S-gene Target Failure (SGTF) in the clinical samples provided.
* The test result must be correlated with clinical observations, patient travel history, vaccination status, immune status and other epidemiological information.
* From the appearance of symptoms, viral load reduces day by day. Due to varied shedding of virus, the result of repeat testing even within hours or days can yield different results.
* Negative results do not preclude SARS CoV-2 infection and should not be used as a sole basis for patient management.
* False negative results may occur in the presence of PCR inhibitors, low RNA quantity in the sample provided, mutations or polymorphisms in the primer and probe binding sites.
* False positive results may be due to cross reactivity with other microorganisms such as influenza virus.
   Repeat testing with fresh sample is suggested after two to four days if clinically suspicious.
* There is significant overlap of specific mutations of S gene in other/many variants of SARS CoV-2.
   For confirmation of results/definitive results, Whole Genome Sequencing is recommended.
* Viral nucleic acids may persist independent of virus viability even after complete disappearance of symptoms.
* CT cut off values are not absolute indication of viral load and should be interpreted with caution. CT cutoff values may vary from lab to lab.
* Current knowledge about novel corona virus is evolving and more studies may be required for further evaluation.

Note :
• ICMR-Registration Number : VIJAY001
• COVID-19 test is conducted with a kit approved by ICMR/CE-IVD/US-FDA.
• Kindly consult Referring Physician/Authorized Government Hospital for appropriate follow up.

Exhibit C

**DR. VITTAL M.D**
**CONSULTANT MICROBIOLOGIST**



**UNITED STATES POSTAL SERVICE** — Retail

**P** US POSTAGE PAID
$8.95
Origin: 94536
03/31/22
0528640181-10

PRIORITY MAIL 1-DAY®

0 Lb 4.00 Oz
1006

EXPECTED DELIVERY DAY: 04/01/22

C060

SHIP TO:
280 S 1ST ST
RM 2112
SAN JOSE CA 95113-3008

USPS TRACKING® #



9505 5107 9097 2090 6400 66



PS00001000014
EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

FROM:
Venkat Guntipally
37817 Laurus Ct
Fremont, CA 94536

TO:
United States District
Court House
280 South 1st Street,
Room 2112
San Jose, CA 95113